ERASTUS B. CARVER

*v.*

STANFORD A. LASATER, AND DANIEL GREGORY.

1. CHANCERY—*finding for defendant for costs, equivalent to a dismissal of bill.* The finding of a court of chancery on the hearing of a cause, on the bill, answer, replication and depositions, "for the defendant for costs," etc., is, in effect, a dismissal of the bill.

2. SAME—*when title will be decreed.* Unless the testimony makes a clear case, a court of equity will not decree the legal title out of the true owner without any compensation being made to him, in the absence of fraud or dishonest practice on the part of the real owner.

3. SAME—*vendor can waive forfeiture.* If the vendor of land chooses to waive a forfeiture in favor of a purchaser from his vendee, he is at liberty to do so, but equity will not compel him.

4. SAME—*clear proof required to decree a specific performance.* A court of equity should not, in any case, decree a specific performance, and divest the owner of land of his title, except upon clear proof.

ERROR to the Circuit Court of Marion county; the Hon. S. L. BRYAN, Judge, presiding

This was a bill in chancery for the specific performance of a contract for the sale of land, brought in the Marion Circuit

Court, at the March term, 1863, by Erastus B. Carver, against Stanford A. Lasater and Daniel Gregory.

The case was heard on the bill, answer, replication, exhibits and depositions, and the court decreed for defendants for costs.

The case is brought here by writ of error.

The facts are fully stated in the opinion of the court.

Messrs. WILLARD & GOODNOW, and Mr. JAMES BASSETT, for the Plaintiff in Error.

Mr. H. K. S. O'MELVENY, for the Defendant in Error, Gregory.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The record in this case shows, that on the seventeenth of March, 1857, the plaintiff in error entered into a contract with Lasater, one of the defendants, of which the following is a copy:

"PATOKA, March 17, 1857.—This indenture, made this day between Stanford A. Lasater of the first part, and Erastus B. Carver of the second part, of Marion Co., Ills.   Whereas, the said Lasater has bargained and sold unto the said Carver, the N. half of S. W. fracl. qu. of Section 19, T. 4 N., 1 east of the third principal meridian, containing forty-five acres, for the sum and consideration of two hundred and seventy dollars, to be paid twelve months after the above date, for which the said Lasater holds a promissory note bearing even date herewith, with interest at ten per cent. ; the said Lasater, his heirs or assigns, hereby agrees, upon the payment of said note, to make and deliver unto the said Carver, his heirs or assigns, a good and sufficient warrantee deed.   In case the said Carver, his heirs or assigns, fail to pay said note when due, this article is null and void, otherwise to remain in full force," etc.

At the August term, 1861, of the Marion Circuit Court, the complainant exhibited his bill of complaint against Lasater, and Daniel Gregory, the other defendant, praying that this contract be specifically performed, and that Gregory be decreed to

carry out and perform it, complainant having performed his part of it, and that Gregory be compelled to make to complainant a good and sufficient warrantee deed, in fee simple, to the land described in the agreement.

The allegations of the bill, on which this prayer as against Gregory is based, are, that about the time the note became due, complainant learned that Lasater, at the time he sold the land, had no title to it, but the same was in Gregory, a resident of Fayette county, who was the owner in fee simple, and was still the owner. It is then alleged, that Lasater, at the time he sold the land, was acting under an agreement between himself and Gregory, by which Lasater had authority from Gregory to sell and convey the land. That afterwards complainant had a conversation with Gregory concerning the purchase from Lasater, and that Gregory stated that by a contract entered into and then existing between him and Lasater, he, Lasater, had authority to contract and sell the land, and that he was bound by the agreement with Lasater to make a conveyance, and would carry out and affirm any and all contracts Lasater made relative to lands in which Lasater had an interest with him, but did not disclose the nature or amount of such interest.

The bill then charges, that Lasater and Gregory were partners in buying and selling lands, Lasater being the active agent in the partnership, Gregory furnishing the money, and the titles taken to Gregory, but with power to Lasater to sell in his own name, Gregory sharing in the proceeds and profits of the sales, and that this particular tract was purchased by Lasater under this agreement, and that he had power and authority from Gregory to sell it, he, Gregory, having agreed with him to affirm and carry out any and all bargains, sales and contracts relative to it. The bill further charges, that the contract between complainant and Lasater was made, possession given by Lasater, and improvements made on the land by complainant, with the knowledge of Gregory, and that he, Gregory, permitted complainant to make the purchase, to take possession, and to make valuable improvements on the land, without disclosing the true state of facts, or in any way making known his inter-

est in the land. There is an allegation, that at the time the note became due, Lasater was in failing circumstances, and has since become wholly insolvent and unable to fulfill his agreement, and that since the transfer of complainant's note, he, complainant, has paid and discharged it, and has repeatedly demanded from both Gregory and Lasater a deed of the land, which has been and still is refused.

The defendants are required to answer, not under oath.

Their answer is joint and several, denying all the allegations of the bill charging a partnership in this land; and on the part of Gregory, he denies all the material allegations in the bill, so far as they are made against him. He states, in the most emphatic terms, that he had no knowledge of the agreement set forth in the bill — that he never consented to it, and was not privy to it in any way — that he has never ratified it, or made himself a party to it, in any manner — and denies all knowledge of the taking possession by complainant and making improvements, and that such possession, if any he has, is without authority from him either directly or indirectly. Defendant Gregory further states, that he does not know when complainant learned that Lasater had no title, but that he, Gregory, was, at the time stated in the bill, the sole owner in fee of the land, and that Lasater never had any legal title to it, nor any interest in it, except what he derived from the contract marked A, filed and made an exhibit in the answer.

That contract is as follows:

"This contract, made this 25th day of July, 1855, between Daniel Gregory, of Fayette county, etc., of the first part, and Stanford A. Lasater, of Marion county, etc., of the second part, witnesseth, that the party of the first part, for and in consideration of the sum of $784\frac{34}{100}$ dollars, to be paid him by the party of the second part, on the 25th day of July, 1856, which payment is hereby declared a condition precedent, does hereby agree to sell and convey unto the party of the second part, by a good deed of conveyance, the following described tracts of land, situated in Marion county, State of Illinois, to wit: E. $\frac{1}{2}$, S. E. $\frac{1}{4}$, of Sec. 7, and W. $\frac{1}{2}$, fracl. Sec. 19, T. 4 N., 1 east of

12 — 36 ILL.

the third principal meridian, containing $261\frac{44}{100}$ acres, more or less, upon the full payment of said sum of money at the time specified, and not before or otherwise. And the said party of the second part does hereby promise to pay the said party of the first part the sum of seven hundred and eighty-four $\frac{34}{100}$ dollars, on the 25th day of July, 1856, to be paid at Vandalia, Illinois. Provided, always, that in case of failure by said party of the second part to pay the said sum of money at the time above specified, then the said party of the first part may consider this contract forfeited, and may take immediate possession of said land and sell and convey the same to any other person whatsoever, and in case also the entry or location of said tract of land at the land office, should, for any cause whatever, be vacated or canceled, then this contract is to be void, otherwise to remain in full force and effect. The party of the second part is to pay all taxes that may accrue on said land." Signed and sealed by Gregory and Lasater.

Both defendants deny expressly that Lasater, when he sold to complainant, was acting under any agreement with Gregory, by which Lasater had power and authority from Gregory to sell and convey the land, and they further expressly deny, that Lasater had any agreement or authority whatever from Gregory to sell and convey the land, other than that referred to in the contract above set out, and a subsequent verbal extension of the time of payment, the contract having been long forfeited. Denies stating to complainant that he was bound by any contract whatever to make any conveyance of the land to any one but Lasater — and denies any promise to carry out and affirm any and all contracts made by Lasater relative to this tract of land, or any other lands in which Lasater had an interest—avers that, if he had any conversation with complainant as he has stated in his bill, he must have stated, and did state the truth as it existed, that the only contract between him and Lasater was the one referred to as Exhibit " A," by which he, Gregory, was only bound to convey to Lasater upon payment of the purchase-money, and that he would not convey to him or any one else until he received his money in full. He

also avers that Lasater has never paid him anything on said land, and that he has received no consideration whatever for the conveyance, or for the promise of one, either from Lasater, or the complainant. The defendants both deny that they were ever, at any time, partners in buying or selling lands, and deny the alleged agency of Lasater, and deny that Gregory furnished money to Lasater to purchase lands, and deny that Lasater ever purchased any land in Gregory's name, or sold the same in his own name with Gregory's consent and knowledge, and deny that Gregory shared in the proceeds; in short, all the material allegations of the bill are met by a full denial on the part of both defendants.

A replication was put in, and the depositions of W. J. Kidder and James Bassett, taken on the part of complainant, were read in evidence.

Kidder's deposition details the circumstances attending an interview had between complainant and Gregory at Vandalia about three years after complainant had contracted with Lasater. The object of the interview, and what gave rise to the conversation, was, that complainant called on Gregory to know how he could procure a good title to the land, complainant being doubtful as to whether he had bought the land of the right person. Much was said between them, the substance of which was, that complainant wanted to get a good title to the land, and proposed buying the land of Gregory. Gregory looked at the numbers, and told complainant that Lasater had already sold it, whereupon complainant informed Gregory that he was the man who had bought it of Lasater, and produced a bond he had acquired from Lasater, and claimed that it was forfeited. Gregory examined the bond, and gave his opinion that it was not forfeited, and then told Carver that any arrangement or sale made by Lasater would be binding on him, Gregory. But before this, Gregory produced a bond between himself and Lasater concerning lands, and read clauses of it to them. After reading the clauses, he said he considered the bond between himself and Lasater binding, although Lasater had not adhered strictly to its terms. He stated, that inas-

much as the bond between himself and Lasater was binding, he considered the bond between Lasater and complainant binding also. Gregory stated he was under obligations to give deeds for all lands sold by Lasater, that he, Lasater, had entered in Gregory's name. On being interrogated what Gregory said as to his being bound to carry out the contract between Lasater and complainant for the sale of this land, he said that the deed was to come from him, Gregory. In reply to a question what Gregory said as to the manner he and Lasater were operating in the purchase and sale of lands, he stated that he furnished the money to Lasater to pay for entering the lands, and Lasater looked up the lands and made the entries. He further stated that he furnished the money to pay for the entry of "said land," and that Lasater looked up the lands and made the entry in Gregory's name. That Lasater had the selling of the lands, and himself the making of the deeds. He stated that he was to receive a certain per cent. on the money he furnished whenever the lands were sold — that there was to be a division of the profits. Is not positive whether the last was said in the conversation with complainant, or whether it was read in the clauses of the bond he read. He said complainant was to get his deed from him, Gregory; don't recollect anything was said as to whom complainant should pay, except that Gregory said the notes complainant had given to Lasater for the land, were binding on complainant.

In answer to the question if anything was said as to what particular lands Lasater was to purchase and sell, the witness stated, it referred generally to all lands entered by Lasater in Gregory's name, and also to the lands purchased by complainant of Lasater.

On cross-examination, this witness stated that he had a bond for a deed from Lasater for the same tract of land, dated about three years after complainant's bond. On being asked to examine exhibit (A), and to state if it is a true copy of the bond produced and partly read in the conversation spoken of, he says, he recognizes the condition or proviso of the bond as being the same as read, but as to the balance could not say

whether it was the same or not — don't remember that Gregory spoke of any other contract with Lasater — all the conversation referred to, relative to the liability of Gregory in regard to the land, was based upon the bond between Gregory and Lasater — no other liability was spoken of, and witness knew of no other liability. Does not recollect that Gregory said he was not bound to make deeds for lands sold by Lasater, until he, Gregory, received the purchase-money. Witness states that Gregory said in that conversation, that Lasater had entered the lands in dispute, in his, Gregory's, name — does not recollect that anything was said about Gregory not having received the purchase-money for this land from Lasater.

On re-examination in chief, witness says he does not recognize the whole bond in defendant's answer, as being the same read by Gregory at the time of this conversation, but recognizes a portion of it from hearing it read — the portion he recognizes is the proviso — considers Lasater's bond to him, for the same land, as void.

The testimony of James Bassett is principally in relation to conversations with Lasater, in which he asked Lasater if he would make a deed to complainant, when he replied he could not, as the legal title was in Gregory. Lasater showed witness a bond or agreement between him and Gregory — there were several indorsements on it — he said there was another agreement between him and Gregory, but could not recollect whether it was in writing, or an agreement understood between them — that he would hunt it up, and if he had it in writing would hand it to witness. He stated that the terms of that agreement were, that he would look up lands which Gregory would enter, that Gregory would furnish the money to pay for the lands, and that he, Lasater, would procure purchasers and sell the lands, and that he and Gregory were to divide the profits between them, and that under that agreement, and the paper he gave witness, he was authorized to treat with complainant, and he being out of the way, had dealt with Kidder. The paper appended to the answer in this cause, witness thinks, is a copy of the one handed him by Lasater, without the indorsements—

which he gave back to Lasater. This was in September, 1860. On his advice, complainant gave up this land on execution, to satisfy the judgment obtained on the note complainant gave to Lasater as the purchase price of the land.

This witness states, he had a conversation with Gregory in the fall or winter of 1860, and after telling him about the several sales of this land by Lasater, witness said he told Gregory he understood the title was in him. Gregory asked where the land was, and being told it was near Patoka, he said he had a bond or agreement with Lasater about lands near Patoka, and that possibly that land might be a part of it. He said that Lasater did not comply with the terms, yet he supposed he would be bound by Lasater's agreement — advised witness to get complainant to pay the purchase-money to him, instead of Lasater or Tong, and then complainant would be sure of a good title. He said there was a general understanding or agreement between him and Lasater about lands, the purchase and selling of lands, including the lands in controversy, but that Lasater never kept his agreements with him. At a subsequent conversation at March term, 1861, witness told Gregory, that complainant was pressing Lasater to an indictment, when he said, if complainant and Lasater could settle and come and arrange with him, he could get the deed. Gregory stated in the first conversation, that he was to furnish money to enter lands and Lasater was to sell and pay the money to him, and there was to be a division of per centage or profits; all the conveyances were to come from Gregory, as the lands were all in him. On his cross-examination, he says Gregory was not present at the conversation with Lasater; does not recollect what the indorsements were on the bond. Lasater said there was another agreement between him and Gregory besides Exhibit A. Understood from Lasater that he had never paid Gregory anything for the land, and Gregory stated the same thing; his impression is, that neither of the indorsements on the bond or agreement shown him by Lasater had relation to the tract of land in controversy; does not know when complainant's note was assigned by Lasater to Tong. Witness states that Gregory told him, in the

conversation referred to, that there was another agreement with Lasater about the entry and sale of land and division of per centage or profits, other than the one referred to in the answer; they were distinct agreements.

There are some other questions to, and answers by, this witness, the precise bearing of which on the case are not very clearly perceived, and we do not condense them.

The cause was heard on bill, answer, replication, exhibits, and these depositions, and the court adjudged and decreed, "for defendants, for costs," etc.

The case is brought here by writ of error, and numerous errors are assigned. The view we have taken of this case, renders it unnecessary to examine these errors one by one. We will only state the conclusions at which we have arrived on the whole record. Counsel admit the decree of the court, is, in effect, a dismissal of the bill.

The first question to be determined is, is it proved that Lasater, in selling this land to Carver, was acting under an agreement between himself and Gregory by which Lasater had authority from Gregory to sell and convey the land? The determination of this question, in great measure, disposes of the case. In the first place there is no allegation in the bill, that Lasater, when he sold to complainants, represented that he had authority from Gregory, or that Gregory had anything to do with the sale, the fact being that Gregory had bargained the land to Lasater as far back as July 25, 1855, and had executed to Lasater a written contract for a deed, on payment of the purchase-money, and which purchase-money is, by the contract, declared a condition precedent, with power in Gregory to declare the contract forfeited. There is not the slightest proof that Lasater, in the sale to complainant, was acting under authority of Gregory, but solely under the contract of purchase from Gregory, which he held. There was no necessity that Gregory should give Lasater authority to sell to complainant, he having bargained the land to Lasater. Lasater had power to transfer this contract to complainant, or sell to him, with covenants to make a title to complainant, or make an absolute deed with covenants to com-

plainant, which he did agree to do. How Gregory can be connected with this transaction, is not apparent. He was not connected in the sale to complainant, nor did complainant entertain the suspicion that he was, until about three years after he had purchased of Lasater. He never understood that Gregory had any interest in this land, until three years after the purchase from Lasater, and it then became important to him, Lasater having assigned his note given for the payment of it, to connect Gregory with the transaction in some way. Accordingly, W. J. Kidder, who had also bought the land of Lasater, went with complainant to Fayette county, to have an interview with Gregory about it. This interview was held about three years after complainant had purchased of Lasater. The object of seeing Gregory, was to know how complainant could get a good title to the land, he being doubtful if he had bought the land of the right person. A proposition was then made on the part of complainant to buy the land of Gregory. Gregory remarked, after looking at the numbers of the land, that Lasater had already sold that tract, whereupon complainant informed Gregory that he was the man who had bought it of Lasater, and produced Lasater's bond, claiming that it was forfeited. Gregory, it appears, thought it was not forfeited, and said, as the title was to come from him, so long as *he* did not declare a forfeiture as against Lasater, the bond of Lasater might be considered as in full force, plainly implying, if complainant would pay him for the land, he, Gregory, would make a deed to him. Some conversation was had, about an arrangement then existing between Gregory and Lasater, about the entry and sale of land, which, it is very evident, had no connection with the sale of this particular tract of land, as it had been sold to Lasater by Gregory, years before. It undoubtedly had reference solely to a speculating contract for the entry and sale of other lands, the profits of which, Gregory and Lasater were to share in certain proportions. It could not, by any possibility, relate to this tract, for the reason there was no partnership about it, Lasater having a contract of purchase from Gregory, by which it became individualized. The

bond read by Gregory, refers most clearly to the entry and sale of lands generally, and could have no reference to this tract sold years before by Gregory to Lasater.

This witness Kidder, had, at this time, a bond from Lasater for this very land which he had bought of Lasater three years after complainant had purchased it, and it would be a very convenient arrangement, if he could make Gregory liable for a deed to him for the land.

The testimony of Mr. Bassett fortifies the view we have taken of the relation existing between Gregory and Lasater, for he speaks, distinctly, of two bonds or agreements between them. His testimony is chiefly in relation to conversations he held with Lasater about making complainant a deed. At one of these conversations, Lasater showed to Bassett an agreement between him and Gregory, with several indorsements on it, and said, there was another agreement between them, or an understanding, and if it was in writing, he would hunt it up and hand it to witness. This agreement was the usual one, that Lasater should select the lands which Gregory would enter with his own money — that Lasater would find purchasers; and he and Gregory divide the profits. This was about three years after Gregory had given Lasater a contract for the land in controversy.

In a subsequent conversation, in the fall of 1860, with Gregory, about the matter, Gregory told him Lasater had not paid him for the land, yet he would be bound by Lasater's agreement, and advised witness to get complainant to pay the purchase-money to him, and then he would be sure of a good title. This witness says, none of the indorsements on the agreement Lasater showed him had any reference to the tract of land in controversy. It follows, it was the agreement about which Kidder testified as existing, by Gregory's acknowledgment, with Lasater in relation to the entry and sale of lands generally.

From all the testimony in the cause, we can see nothing which should compel a court of equity to decree the legal title to the

land out of the true owners, without any compensation therefor, in the absence of all fraud or dishonest practice.

This is a case where a party has bought land of one who had no title to it, and finding, three years thereafter, and when he is sued for the purchase-money, that another person had a contract for the entry and sale of lands, and for a division of profits, he seeks to put this tract in the condition of such lands, though it had been contracted to the party from whom he purchased a long time before, and whose bond he held for a title.

There is not, by the evidence in this cause, evolved any principle of justice or equity which requires Gregory to make a deed to complainant for this land without payment of the purchase-money to him, nor did complainant ever demand such deed. Complainant did not make the purchase of Lasater with any reference to a liability of Gregory. He admitted to Gregory, he had bought the land of the wrong person, and he can get a title only by performing Lasater's contract with Gregory, if Gregory chooses to waive its forfeiture.

It appears in the proofs, that complainant turned out this tract of land to the sheriff to be sold on the execution which issued on the judgment on his note, and it seems he has paid his debt with it, and is no great loser by the transaction. Had he inquired into Lasater's title before he purchased, as he might have done, he would have escaped the embarrassment into which his own imprudence has involved him. Nothing is shown to make Gregory responsible.

It is a well settled principle, that a party coming into a court of equity to ask the equitable interposition of that court, shall be required to do equity. In view of this principle, this court would not be justified in decreeing the title to this land out of Gregory, he having received no consideration for it, and having practiced no fraud upon any person, or done any act or made any assertion in relation to the land which influenced in the slightest degree the conduct of complainant.

A court of equity should not, in any case, decree a specific performance and divest the owner of land of his title, except

upon clear proof, which we do not find in this case.    In the
exercise of a reasonable discretion in this case, we are unable
to decree for complainant, and concur with the Circuit Court
in its decree dismissing the bill.

*Decree affirmed.*